Kenneth **JOHNSON**, Plaintiff, Appellant,

v.

**PINKERTON ACADEMY**, et al., Defendants, Appellees.

Kenneth **JOHNSON**, Plaintiff, Appellee,

v.

**PINKERTON ACADEMY**, et al., Defendants, Appellants.

Nos. 87–2140 to 87–2142.

United States Court of Appeals, First Circuit.

Heard Sept. 7, 1988.

Decided Nov. 18, 1988.

Rehearing and Rehearing En Banc Denied Dec. 22, 1988.

I. Michael Winograd with whom Peter C. Hildreth, Scott Hood and Winograd P.A., Concord, N.H., were on brief, for Kenneth Johnson.

Jack B. Middleton with whom Kevin M. Fitzgerald and McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., were on brief, for Pinkerton Academy, et al.

Before CAMPBELL, Chief Judge, and ALDRICH and SELYA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

In 1981, plaintiff Kenneth Johnson was hired as a teacher by defendant Pinkerton

Academy on a one year, renewable, contract, subsequently renewed. He agreed to conform to defendant's rules of conduct, of which he was given a copy. One of the rules was that teachers could not wear beards. Plaintiff was clean shaven at the time, and voiced no objection. Thereafter he engaged in much civil rights discussion with his classes, and his views ultimately caused him to decide to grow a beard as a means of assertion. The confrontation with the school authorities proving a stalemate, plaintiff was discharged in January, 1984. He now seeks declaratory and injunctive relief, and money damages under 42 U.S.C. § 1983.

While it may be difficult for some to see why this matter was so important,[1] plaintiff's interest clearly not being cosmetic, Shakespeare's recitation of the seven ages of man is not condemnatory.[2] However, plaintiff initially had to realize that he was obliged to come within the confines of 42 U.S.C. § 1983 and show that defendant's objected-to conduct was, at least in part, state action. In this the district court held in his favor, but it ultimately found against him on the merits, viz., finding that defendant's forbidding beards to teachers was not inherently unreasonable. On this appeal we do not reach this latter finding, but hold that, in spite of a very thoughtful opinion, the court erred with respect to state action.

▮ Before discussing the authorities, we note the error in plaintiff's approach. Defendant's principal case is *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), also involving a private school, in which this court was affirmed in its conclusion that the school was not a state actor. As here, the school was privately formed and privately owned, operating on private property and conducted by private individuals, all of whom were chosen, and administered, by private management. Plaintiff says the *"Rendell–Baker* Court utilized a series of tests before con-

cluding that the school's actions were not attributable to the state." Plaintiff has it just backwards. Where one starts with an admittedly private institution the question is not what tests show its actions are not attributable to the state, but, rather, what shows they are attributable. In this circumstance, plaintiff has the burden of showing "the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (emphasis in original).

▮ It so happened that Pinkerton Academy had already been declared a state actor. *Doe v. Hackler,* 316 F.Supp. 1144 (D.N.H.1970) (Bownes, J.). In *Hackler* the court relied on three factors: (1) "directly accepting state money as tuition;" (2) the power of the State Board of Education to approve facilities and equipment; and (3) the provisions of New Hampshire Rev.Stat. Ann. 194:22. *Hackler,* 316 F.Supp. at 1147. The present district court correctly recognized that the first two factors were too broad and had been rejected by *Rendell–Baker* as applicable to every private contractor who does public work. The court held *Rendell–Baker* distinguishable, however, on two grounds: that the Court indicated it would reach a different result if the private contractor was performing a function "traditionally the *exclusive* prerogative of the State," 457 U.S. at 842 (emphasis in original), and the terms of the New Hampshire statute relied on in *Hackler.*

It is true that in noting the *Rendell–Baker* Court's finding that educating specially disadvantaged and troubled children was not an exclusive state operation, the district court was able to assert a present distinction. It is our function, however, to search for the Supreme Court's general intent, not for ways to distinguish its decisions. The Court grants certiorari to determine principles, not to right some purely factual error. The reasoning of the dissent

---

**1.** The district court docket contains 65 entries, and we have received, counting both parties, over 100 pages of briefs.

**2.** "Then a soldier ...
  bearded like the pard [leopard]

Jealous in honor....
Seeking the bubble reputation
Even in the cannon's mouth."
W. Shakespeare, *As You Like It,* II, vii.

itself confirms that the *Rendell–Baker* Court was interested in much more than schools for troubled children.

■ As to the present, New Hampshire history shows that educating children of high school age was not traditionally an exclusive public function. Phillips Exeter Academy, and St. Paul's School, indisputably private schools, are more than a century old. Plaintiff's charging that comparison with them is "ludicrous" does not make them disappear. Granted that the state requires that its children, to a certain age, be educated, even to the extent of assuming full tuition cost of all who do not voluntarily pay their own way, it does not follow that the mechanics of furnishing the education is exclusively a state function. We turn to the example of a private road contractor. The maintaining of public roads would seem a classically exclusive state function, but this does not make a private contractor a state operator, owing § 1983 obligations to its employees. *Cf. Rendell–Baker v. Kohn*, 457 U.S. at 840–41, 102 S.Ct. at 2770–71.

■ Moreover, while we need not finally decide, the principle of exclusive state function would seem entirely remote from this case. We believe that by exclusive function the Court had in mind that where a function was exclusively the state's it could not be permitted, by delegation, to escape its responsibilities. If there were responsibilities in the present case, they would relate to students, and not to teachers. *See Rendell–Baker v. Kohn*, 641 F.2d 14, 26 (1st Cir.1981). Except as their conduct might affect their students, the state had no concern with defendant's teachers.

Nor do we agree with the court's reliance on the New Hampshire statute.

*Contracts with Schools.* Any school district may make a contract with an academy, high school or other literary institution located in this or, when distance or transportation facilities make it necessary, in another state, and raise and appropriate money to carry the contract into effect. If the contract is approved by the state board *the school with which it is made shall be deemed a high school maintained by the district.*

N.H.Rev.Stat.Ann. 194:22 (emphasis added).

As we read the district court's opinion, it looked exclusively to the terms of the statute without reference to legislative history. This was error. Standing alone, to interpret "maintained by the district" as meaning operating, or exercising control over, is totally contrary to fact. It must also be perceived as contrary to common sense, since the statute applies equally to an "institution located ... in another state," hardly New Hampshire operated. Thus we have a typical case where it is necessary to resort to legislative history to ascertain the statute's purpose and meaning.

So doing, we find the answer clear. Chapter 96 of the New Hampshire Session Laws of 1901, Section 1, read in part:

Any town not maintaining a high school ... shall pay for the tuition of any child who with parents or guardian resides in said town and who attends a high school or academy in the same or another town or city in this state....

Chapter 118 of the Laws of 1903, Section 3, amended Chapter 96 to add the following language:

Any school district may make contracts with an academy, located within its limits, for furnishing instruction to its scholars; ... such academy shall be deemed a high school maintained by such district....

It is thus apparent that the quoted emphasized language on which the district court relied did not mean taking over the operation of private academies, but had the limited purpose, by indirection, of relieving the towns from paying the tuition of students who chose to attend schools lacking town contracts. It is of no assistance to plaintiff in this case.

■ On this appeal plaintiff raises, for the first time, a further matter, that defendant is a state actor because its teachers participate in the pension plan established by N.H.Rev.Stat.Ann. Ch. 100–A, claiming that we can, and should, take judicial notice of this statute. We find no assistance from this statute. Indeed, examination of all its terms mainly raises a question in our minds how defendant's em-

ployees have been found to come under it.[3] But even if we were to give plaintiff the most favorable possible inference—that the State pays defendant's teachers retirement benefits—this would be no more than the equivalent of additional compensation to defendant for its teaching services by relieving defendant of pension obligations. It would not show any state administration or control of the teachers, or of defendant with reference to them.

■ Plaintiff has made a number of further contentions, including that he should have the benefit of a statute enacted after his discharge (which we would not find relevant even had it preceded it), and that defendant's Advisory Committee composed of Academy trustees and "representatives from the contract towns ... to facilitate the mutual exchange of information ..." shows state operation. It is regrettable that a party should lose such sense of proportion. We have examined all contentions, but find them too insubstantial to call for discussion.

Although on a different ground (there being no need to reach the merits), the dismissal of the action is affirmed.

---

**3.** Under R.S.A. 100–A:1 (V) an "employee" must either be "paid through the office of the state treasurer" (which defendant's teachers are not), or be an "employee of any of the groups authorized to participate in the retirement system under this chapter." Singularly, we do not find any provision in the statute accepting defendant as a participator. See R.S.A. 100–A:29.