**Richard S. ABANY, Plaintiff,**

v.

**Mark FRIDOVICH, et al., Defendants.**

**Civ. A. No. 93–10251–RCL.**

United States District Court,
D. Massachusetts.

July 12, 1994.

---

Richard S. Abany, pro se.

Mark Fridovich, Greg Canfield, Barbara Schwartz, Mithsleh Garg, Scott M. Davis, Atty. General's Office, Boston, MA, for defendants.

### ORDER

LINDSAY, District Judge.

Approved.

### REPORT AND RECOMMENDATION RE: MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM *(DOCKET ENTRY # 9)*

June 20, 1994

MARIANNE B. BOWLER, United States Magistrate Judge.

On January 29, 1993, plaintiff Richard S. Abany ("plaintiff"), presently confined in the Massachusetts Treatment Center for Sexually Dangerous Persons (the "Treatment Center"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 ("section 1983") and a motion to proceed *in forma pauperis.* (Docket Entry # 1). On June 12, 1993, the district judge allowed plaintiff leave to file his complaint *in forma pauperis* and directed the clerk to issue summons.

On September 8, 1993, defendants Mark Fridovich, Mithsleh Garg, Greg Canfield and Barbara Schwartz ("defendants")[1] filed a

1. Defendant Mark Fridovich is the Administrator of the Treatment Center, defendant Greg Canfield is the Director of the Justice Resource Institute ("J.R.I.") program at the Treatment Center, defendant Barbara Schwartz is the Clinical Director of the J.R.I. program at the Treatment Center, and defendant Mithsleh Garg is the Department of Mental Health Clinical Director at the Treatment Center. Plaintiff sues each defendant in his or her individual and official capacities. (Docket Entry # 1).

motion to dismiss arguing lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") and failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry # 9).[2] On April 26, 1994, plaintiff filed an opposition to the motion to dismiss. (Docket Entry # 15).

## BACKGROUND

Plaintiff was sentenced to serve a 15 to 30 year prison term and was adjudged a "sexually dangerous person" and simultaneously confined to the Treatment Center.[3] Plaintiff's prison term and his commitment to the Treatment Center were set to run concurrently.[4] (Docket Entry # 1). As a patient at the Treatment Center, plaintiff is entitled to receive mental health treatment and to be released when he is no longer sexually dangerous. Mass.Gen.L. ch. 123A, § 9. After being released from the Treatment Center, a patient serving a concurrent criminal sentence is remanded to the Department of Corrections to serve any remaining term of his sentence. *Martel v. Fridovich*, 14 F.3d 1, 2 (1st Cir.1993).

Massachusetts General Laws, chapter 123A, section eight ("section eight"), requires the Department of Mental Health ("the DMH") to create and maintain a program at the Treatment Center providing "for the restrictive integration of [its patients] into a non-custodial environment." Mass.Gen.L. ch. 123A, § 8. Section eight mandates that the program be created "in a manner consistent with security considerations" and limits participation in the program to patients who "will not present a danger to the community

under the controls provided by the program." *Id.*

Under a partial consent decree, first entered into in 1975 and addressing the section eight program, the DMH agreed to develop a plan to provide "adequate treatment" for Treatment Center patients. Under the consent decree the plan was to provide for, *inter alia,* "the day or other short term release of Treatment Center patients for approved programs outside the Treatment Center where such release is deemed appropriate by the Department of Mental Health." *Martel v. Fridovich,* 14 F.3d 1, 2 (1st Cir.1993); *see also Langton v. Johnston,* 928 F.2d 1206, 1228 (1st Cir.1991).

When first created, the section eight program was entitled the Authorized Absence Program (the "AAP"). *Martel,* 14 F.3d at 2. The DMH revised the AAP's rules in 1991 after escapes by two AAP participants and the subsequent reevaluation of the AAP in the context of public safety and clinical concerns. The new program, entitled the Transition Program, prohibits patients such as plaintiff, who are under a concurrent criminal sentence and who neither were paroled to the Treatment Center nor are currently eligible for parole, from eligibility for the program. *Id.* at 2.

The Treatment Center's "Rules of Confidentiality" require patient confidentiality in all cases except where a suit is filed by a patient against the Treatment Center. These rules are published by the Treatment Center for public access. (Docket Entry # 1, Ex. B).

 In his complaint, plaintiff alleges that: (1) the Transition Program violates his con-

---

**2.** Inasmuch as plaintiff had not filed a response to the motion to dismiss as of March 8, 1994, this court on that date issued a Show Cause Order directing plaintiff, in the event he wished to oppose the motion to dismiss, to file a response to the motion on or before April 4, 1994. (Docket Entry # 13). By letter to this court dated March 15, 1994, plaintiff stated that he could not locate and did not remember receiving a motion to dismiss and requested that this court provide him additional time to file a response. By Procedural Order dated March 18, 1994, this court allowed plaintiff until April 29, 1994, to file an opposition to the motion to dismiss. (Docket Entry # 14).

**3.** Though the record does not indicate when plaintiff was sentenced, and therefore it is not clear how much of his sentence remains to be served, plaintiff represents that under current Treatment Center rules he must wait at least 19 years before being eligible for a community access program. (Docket Entry # 15).

**4.** Plaintiff avers that, as a matter of course, "[a]ll patients at the treatment center are civil commitments in accordance with M.G.L. ch. 123A." (Docket Entry # 1).

stitutional rights to equal protection and due process; (2) the Transition Program violates his Eighth Amendment right against cruel and unusual punishment; (3) the Transition Program's revision of the AAP's eligibility rules violates his constitutional right against *ex post facto* legislation; (4) the exception to the confidentiality requirement under the Treatment Center's "Rules of Confidentiality" for suits filed against the Treatment Center violates his right to free speech under the First Amendment; and (5) the Transition Program violates the consent decree, as well as section 123A[5] and other state laws. (Docket Entry # 1). Plaintiff seeks monetary damages, declaratory and injunctive relief. (Docket Entry # 1).

■ In his due process and equal protection claims, plaintiff argues that the Transition Program's prohibition of eligibility for the program to all criminal patients other than those who are paroled to the Treatment Center is constitutionally impermissible because it precludes the possibility of a patient's utilizing the program as a method for reducing his period of incarceration.[6] In his Eighth Amendment claim, plaintiff argues that the denial of the possibility of his eligibility for the program constitutes cruel and unusual punishment.[7] (Docket Entry # 1).

## DISCUSSION

■ On a motion to dismiss pursuant to Rule 12(b)(6), "the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party." *Hathaway v. Stone*, 687 F.Supp. 708, 710

**5.** Plaintiff's allegation that section eight of chapter 123A requires program eligibility after completion of two years at the Treatment Center (Docket Entry # 1) represents an incomplete reading of section eight. Under the explicit terms of section eight, paragraph one, sentence three, each and every one of the three requirements of sentence three, prong (a), prong (b), and prong (c), must be met in order for a patient to be eligible for the program. Mass.Gen.L. ch. 123A, § 8 ("A person shall be eligible for such a program if (a) he has completed at least two years custody within the center, and (b) restrictive integration is appropriate and will significantly advance his treatment, and (c) he will not present a danger to the community under the controls provided by the program.").

**6.** Plaintiff states that he has a liberty interest in the Transition Program because defendants "acknowledge" this fact and because the program is a "treatment device" which is "used by patients as a mode to demonstrate that they are no longer sexually dangerous" and thereby to effectively reduce their sentence. (Docket Entry # 1).
Plaintiff's reasoning, however, is flawed. Plaintiff's reference to an admission by different defendants in a wholly unrelated case, the case of *Gonsalves v. Mach*, has no bearing on the position of defendants in the instant case. (Docket Entry # 1, Ex. D). Plaintiff's reference to the case of *Williams v. Lesiak* is misplaced also, as that case does not address the issue argued by plaintiff, that of whether a liberty interest exists in the program. (Docket Entry # 1, Ex. E). Further, though the Transition Program might allow plaintiff short-term release *if he were eligible for the Transition Program*, plaintiff cannot have a liberty interest in short-term release when he is not eligible for the Transition Program. *See Martel v. Fridovich*, 14 F.3d 1, 2 (1st Cir.1993) ("Since [plaintiff] concedes that he

does not meet the eligibility requirements of the revised rules, he does not have any state created liberty interest in short-term release which would implicate the federal right to procedural due process.")

Plaintiff additionally claims that the Treatment Center's planned use of polygraphs and plethysmographies under the Transition Program violates an unspecified liberty interest. This argument is unavailing, as plaintiff makes no allegation that these devices ever have been used against him. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–74, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700 (1982).

**7.** In his opposition, plaintiff alleges that the designation of the Treatment Center as a punitive environment in 1994 violated a "least restrictive environment clause" in the 1975 consent decree and constituted a violation of his Eighth Amendment rights. (Docket Entry # 15). Plaintiff, however, does not support his apparent contentions that the designation of the Treatment Center as a punitive environment violated the consent decree and that a violation of the consent decree constitutes a violation of his constitutional rights. *See Martel v. Fridovich*, 14 F.3d 1, 3 (1st Cir.1993) ("The appropriate vehicle for enforcement of the consent decree is an action for contempt brought before the court responsible for the decree.").

Further, plaintiff argues that, if he had known of the rule that confinement at the Treatment Center precludes eligibility for prerelease or furlough to patients with a concurrent criminal sentence, he might have originally avoided classification as a sexually dangerous person. This argument is wholly unsupported in fact and in law and is, therefore, unavailing.

(D.Mass.1988). A court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977); *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (on motion to dismiss, issue is not whether the plaintiff will prevail, but whether, construing complaint liberally, the plaintiff should be entitled to offer evidence in support of his claims). While the complaint need only set forth "a generalized statement of facts," the plaintiffs must provide enough information "to outline the elements of the pleaders' claim." *Kadar Corp.*, 549 F.2d at 233.

■ On a motion to dismiss, civil rights claims are subject only to normal standards of pleading. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).[8] The correct standard for assessing the sufficiency of the instant complaint, therefore, is whether, accepting the factual allegations in the complaint as true and construing them in the light most favorable to plaintiff, the complaint shows any set of facts which could entitle plaintiff to relief. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### A. *Section 1983 Claims*

■ To maintain a cause of action under section 1983 for a violation of due process, a plaintiff must show actions which "shock the conscience," offend the "concept of ordered liberty," or suggest "outrageousness." *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689,

61 L.Ed.2d 433 (1979) (Blackmun, J. concurring). Only conduct which is so egregious that it violates "principles of justice so rooted in the conditions and conscience of our people as to be ranked as fundamental" can be found to violate substantive due process and thus to support a claim cognizable under section 1983. *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

■ In the recent case of *Martel v. Fridovich*, decided on December 8, 1993, and therefore after the filing of the instant case, the First Circuit Court of Appeals dismissed a complaint alleging almost identical circumstances and including almost identical claims to the instant complaint. *Martel v. Fridovich*, 14 F.3d 1 (1st Cir.1993) (holding that the Transition Program's revised eligibility requirements for reintegrating Treatment Center patients into the community do not violate federal constitutional rights). *Martel* involved a Treatment Center patient serving a concurrent criminal sentence who claimed that the Transition Program's revised eligibility requirements violated his rights to due process and equal protection, subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and violated the constitutional prohibition against *ex post facto* legislation. *Id.* at 2–3. The *Martel* court dismissed all of the plaintiff's claims. *Id.* at 2.

Regarding the issue of whether the Transition Program rules constitute a violation of due process rights, *Martel* held that, "[t]he revision of the program was not so 'outrageous' as to constitute a violation of substantive due process." *Id.* at 2 (citing *Amsden v.*

---

8. Prior to the *Leatherman* decision, this circuit applied a heightened standard for specificity in pleading on Rule 12(b)(6) motions. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989) (on a motion to dismiss, "[t]he need [for specific factual allegations] is perhaps greater where allegations of civil rights violations lie at the suit's core"); *Cuddy v. City of Boston*, 765 F.Supp. 775, 777 (D.Mass.1991) (on a motion to dismiss, the First Circuit Court of Appeals "has consistently required plaintiffs, at a minimum, to outline the specific facts on which they rely in civil rights cases"); *see also Glaros v. Perse*, 628 F.2d 679, 684 (1st Cir.1980) (while discovery may help clarify issues, plaintiff in his complaint must plead specific facts in support of

civil rights violation); *Cohen v. Illinois Inst. of Technology*, 524 F.2d 818, 827 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) (on a motion to dismiss, plaintiff "is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which [he] has not made"). In *Leatherman*, however, the Court specifically held that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under [section 1983]." *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1161.

*Moran,* 904 F.2d 748, 754 (1st Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991)). The Transition Program's rules are therefore, *per se,* not violative of a patient's substantive due process rights. Further, *Martel* found that, "[s]ince the plaintiff concedes that he does not meet the eligibility requirements of the revised rules, he does not have any state created liberty interest in short-term release which would implicate the federal right to procedural due process." *Martel,* 14 F.3d at 2. Plaintiff's violation of due process claim is, accordingly, unavailing.

██ Regarding the issue of whether the Transition Program's rules constitute a violation of a patient's equal protection rights, the *Martel* court found that "the distinction in the revised rules between civilly committed patients under a criminal sentence and patients who are not is rationally related to the legitimate state interest in ensuring the safety of the community." *Id.* at 2 (citing *Whiting v. Westerly,* 942 F.2d 18, 23 (1st Cir. 1991)). Therefore, because no suspect classification is involved and the Transition Program's revised rules satisfy the equal protection "rational basis" test, plaintiff's complaint fails to allege an equal protection violation.

██ Plaintiff alleges that the denial of his eligibility for the program under the revised rules constitutes cruel and unusual punishment. The First Circuit Court of Appeals, however, summarily rejected this exact claim in *Martel. Martel,* 14 F.3d at 2 n. 2. The court found that the Transition Program's rules "are not punitive but rather related to the state's concern for community safety." *Id.* at 3. Thus, inasmuch as the Transition Program's rules do not constitute punishment, plaintiff's claim that the Transition Program subjects him to "cruel and unusual punishment" fails to withstand the motion to dismiss.

██ Similarly, the claim that the Transition Program violates the constitutional prohibition of *ex post facto* laws is untenable.

*Martel* found that the *Ex Post Facto* clause applies only to "punishments inflicted" and the Transition Program rules are not punitive. *Id.* at 3. Rather, the revised rules are the "revocation of a privilege voluntarily granted." *Id.* at 3. Thus, because the Transition Program's rules cannot implicate the *Ex Post Facto* clause, plaintiff's *ex post facto* allegation fails to state a claim upon which relief can be granted.

██ Plaintiff alleges that defendants violated plaintiff's rights under the First Amendment by publishing a statement that information relevant to litigation filed by patients against the Treatment Center would not be confidential. To maintain a cause of action for a violation of the First Amendment, a plaintiff "must allege that his speech was in fact chilled or intimidated." *Sullivan v. Carrick,* 888 F.2d 1, 4 (1st Cir.1989). The chilling effect must not be merely "indirect, speculative, or too remote." *Id.* at 4 (holding that plaintiff's "mere allegation that he was harmed" with "no specifics offered to support such a conclusion" does satisfy the causation requirement of section 1983 action alleging violation of the First Amendment) (citing *United States v. Harriss,* 347 U.S. 612, 626, 74 S.Ct. 808, 816, 98 L.Ed. 989 (1954)). Not only does plaintiff not allege any facts indicating his speech was chilled, but also the fact that plaintiff brought this suit further suggests that the statement did not chill his speech. Hence, plaintiff's claim of a violation of the First Amendment fails to overcome the motion to dismiss.

██ Regarding plaintiff's claims of violations of the consent decree, "[t]he appropriate vehicle for enforcement of the consent decree is an action for contempt brought before the court responsible for the decree." *Martel v. Fridovich,* 14 F.3d at 3. n. 4.

## CONCLUSION

Accordingly, this court **RECOMMENDS**[9] that defendants' motion to dismiss (Docket

---

9. Any objections to this Report and Recommendation must be filed with the Clerk of court within ten days of receipt of the Report and Recommendation and must identify the portion of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the

Entry # 9) for failure to state a claim upon which relief can be granted be **ALLOWED** in regard to all federal claims. Inasmuch as this is not an appropriate case to exercise pendent jurisdiction over the state law claims under the formulation set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), this court also **RECOMMENDS** [10] that pendent jurisdiction over plaintiff's state based claims be **DENIED.**

district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).

10. See footnote number nine.