James TYNECKI, Plaintiff,

v.

**TUFTS UNIVERSITY SCHOOL OF DENTAL MEDICINE, et al., Defendants.**

Civ. A. No. 93–10592–JLT.

United States District Court, D. Massachusetts.

Dec. 26, 1994.

John C. Doherty, Andover, MA, Madeline Sheila Galvin, James E. Morgan, Jose W. Hernandez–Cuebas, Delmar, NY, for plaintiff.

John M. Griffin, Allison B. Kaplan, Diane Rosse, Nutter, McClennen & Fish, Boston, MA, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

In February, 1993, defendant Tufts University School of Dental Medicine (the "Dental School") permanently expelled plaintiff James Tynecki for desecrating a cadaver. Tynecki filed the present action against the Dental School, as well as various faculty members and students [1], alleging: (1) violation of 42 U.S.C. § 1983 (Count I); (2) violation of the Fourteenth Amendment to the United States Constitution (Count II); (3) violation of the Massachusetts Constitution (Count III); (4) intentional infliction of emotional distress (Count IV); and (5) slander (Count V).

Presently before the court is defendants' motion to dismiss.

---

**1.** Dean Erling Johansen; Dr. Edmund Cataldo; Dr. David Russell; Dr. Myra Rufo; Lan–Dai Huang; and Myung Kim.

## I.

### Background

In the Fall of 1992, Tynecki began his first year of study at the Dental School. As part of the curriculum, he was enrolled in Dental Gross Anatomy with Dr. Myra Rufo.

On November 17, 1992, Dr. Rufo was allegedly informed by one of the students in her class that Tynecki had boasted of desecrating a cadaver in the Gross Anatomy laboratory. After investigating the allegation, Dr. Rufo concluded that Tynecki had desecrated one or more cadavers. Furthermore, Dr. Rufo learned that Tynecki had allegedly approached several witnesses and threatened them if they did not support him.

In a letter dated December 20, 1992, Dr. Rufo informed Dean Johansen of the allegations and communicated the results of her investigation. Based on Tynecki's alleged threats, Dean Johansen suspended him from the Dental School pending an informal hearing.

Tynecki appeared for the informal hearing on January 13, 1993. Unable to resolve the matter at this hearing, a formal hearing was scheduled for January 28, 1993. At the formal hearing, the Dental School Ethics Board, comprised of both students and faculty members, heard evidence, determined that Tynecki had in fact desecrated one or more cadavers, and recommended that he be permanently expelled.[2] On February 3, 1993, Dean Johansen reviewed the Ethics Board's findings, adopted their recommendation, and permanently expelled Tynecki from the Dental School.[3] Dean Johansen subsequently affirmed this recommendation on February 10, 1993, two days after an appeals hearing requested by the plaintiff.

Tynecki filed the present action on March 18, 1993. Shortly thereafter, on April 5, 1993, Associate Dean Stinson learned that Tynecki had allegedly assaulted Peter Cummings near the student dormitory.[4] Based on this incident, Tynecki was permanently banned from Dental School property.

## II.

### Standard of Review

█ It is well-settled that a court may not dismiss a plaintiff's complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Coyne v. City of Somerville*, 770 F.Supp. 740, 743 (D.Mass.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Moreover, when considering a motion to dismiss, the court must accept all well-pled factual averments as true, and draw all reasonable inferences therefrom in [the plaintiff's] favor. *Abany v. Fridovich*, 862 F.Supp. 615, 619 (D.Mass.1994) (citing *Hathaway v. Stone*, 687 F.Supp. 708, 710 (D.Mass.1988)). But, "while the complaint need only set forth 'a generalized statement of facts,' the [plaintiff] must [still] provide enough information 'to outline the elements of [his] claim.'" *Abany*, 862 F.Supp. at 620 (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977)).

With these precepts in mind, the court now considers the merits of defendants' motion to dismiss.

## III.

### Analysis

A. *Violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Massachusetts Constitution*

█ In Counts I, II.and III of the complaint, the plaintiff asserts that his summary

---

**2.** The Dental School Ethics Board also found (1) that Tynecki had coerced students concerning their provision of information about the desecration of the cadaver, (2) that there was insufficient evidence that Tynecki threatened students concerning their provision of information about the desecration of the cadaver, and (3) that there was insufficient evidence that Tynecki violated the conditions of his suspension.

**3.** Dean Johansen found (1) that evidence supported the Board's finding that Tynecki desecrated a cadaver in the Gross Anatomy laboratory, but (2) that there was not convincing evidence that Tynecki had coerced students concerning their provision of information about desecration of the cadaver.

**4.** Peter Cummings is one of the Dental School students that had testified before the Dental School Ethics Board.

suspension and permanent expulsion from the Dental School violated his civil rights under 42 U.S.C. § 1983, the Fourteenth Amendment and the Massachusetts Constitution. It is well settled, however, that in order to state a valid cause of action under 42 U.S.C. § 1983, the Fourteenth Amendment, or the Massachusetts Constitution, a plaintiff must allege deprivation of a right which may be " 'fairly attributable to the State.' " *Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)).[5] Because the defendants are all admittedly private parties, whether their actions may be fairly attributable to the State is essential to resolution of the Constitutional issues.

In their motion to dismiss, defendants argue that the plaintiff has failed to allege any facts establishing state action. Although Count I of the complaint does allege that the defendants violated the plaintiff's rights "under color of state law," Complaint at ¶ 30, the complaint contains no factual support therefore. Moreover, in asserting his claims for violation of the Fourteenth Amendment and the Massachusetts Constitution, the plaintiff neglects to make even this conclusory state action assertion. Complaint at ¶ 32, 34. The complaint, thus, contains no more than an unsubstantiated claim that defendants acted "under color of state law." Nevertheless, the court will still consider the plaintiff's various legal arguments to determine whether the evidence permits a state action finding in the present case.

In his opposition to the defendants' motion to dismiss, the plaintiff argues that the private defendants' conduct involved state action for the following reasons: (1) the Dental School assumed the role of professional regulator, effectively determining that the plaintiff should not be allowed to continue his chosen professional career path; (2) the Dental School denied possession of any physical evidence regarding the alleged incident and failed to file reports purportedly required under government cadaver regulations; (3) the Dental School actively participated in the criminal prosecution of the plaintiff's alleged assault on Peter Cummings; (4) the Dental School permanently banned the plaintiff from Dental School property because of his alleged assault on Peter Cummings; (5) the Dental School is chartered under the laws of Massachusetts, receives direct and indirect

---

**5.** The Supreme Court has long held that the United States Constitution applies only to actions by governments and their employees. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The Massachusetts Supreme Judicial Court has found the same requirement exists under the Massachusetts Constitution. *See Phillips v. Youth Development Program, Inc.*, 390 Mass. 652, 459 N.E.2d 453, 458 (1983) ("the concept of due process of law ('the law of the land'—art. 12 of the Massachusetts Declaration of Rights) inherently is concerned with governmental action"); *Horsemen's Benev. and Protective Ass'n, Inc. v. State Racing Com'n*, 403 Mass. 692, 532 N.E.2d 644, 646 n. 1 (1989). This is the so called state action requirement. Accordingly, in order to maintain a valid claim under the Fourteenth Amendment or the Massachusetts Constitution, a plaintiff must allege a deprivation of rights "fairly attributable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753 (1982).

42 U.S.C. § 1983, in turn, creates liability against any person who violates the Constitution or laws of the United States while acting " 'under color of any statute, ordinance, regulation, custom or usage of any State or Territory.' " *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 256 (1st Cir.1994) (quoting *Lugar*, 457 U.S. at 924, 102 S.Ct. at 2747). *See also Watterson v. Page*, 987 F.2d 1, 7 (1st Cir.1993); *Willhauck v. Halpin*, 953 F.2d 689, 703 (1st Cir.1991).

The Supreme Court has since discussed the relationship between the state action requirement of the Fourteenth Amendment and the "under color of state law" pursuant to 42 U.S.C. § 1983. *Lugar*, 457 U.S. at 935, 102 S.Ct. at 2752. In addition, although state action under the Massachusetts Constitution need not be defined identically to the Supreme Court's definition under the Fourteenth Amendment, the Supreme Judicial Court has nonetheless relied on the Federal analysis in its jurisprudence. *Phillips*, 459 N.E.2d at 458.

Accordingly, the state action requirement under both the Massachusetts and Federal Constitutions and the "under color of state law" requirement of 42 U.S.C. § 1983 are essentially the same and may be collapsed into a single state action analysis in the present case. *See Ponce*, 760 F.2d at 377 n. 2. Pursuant to this analysis, if state action is found, it will automatically satisfy the "under color of state law" analysis. To the contrary, if no state action is found, the 42 U.S.C. § 1983 and Fourteenth Amendment claims, as well as the Massachusetts Constitutional claim, all must fail.

federal financial assistance, is involved in numerous government research projects, and participates in various governmentally regulated activities; and (6) the Dental School, as well as its students and faculty, provide economic benefit to the State.

To determine whether the private defendants' conduct constituted state action under any of the above theories, the court will consider each pursuant to the following three part inquiry:

(1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; and (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state may be recognized as a joint participant in the challenged activity.

*Citizens to End Animal Suffering v. Faneuil Hall,* 745 F.Supp. 65, 69 (D.Mass.1990); *See also Rodriguez–Garcia v. Davila,* 904 F.2d 90, 96 (1st Cir.1990); *Ponce,* 760 F.2d at 377; *Rockwell,* 26 F.3d at 257–60.

### 1. *Nexus/State Compulsion*

State action is present under the nexus/state compulsion test where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). The Supreme Court has interpreted this test narrowly, holding that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives...." *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Instead, the Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.,* at 1004, 102 S.Ct. at 2786. *See Rockwell,* 26 F.3d at 258. Accordingly, state action exists only if the Dental School's private decision to permanently expel Tynecki was the product of either government coercion or significant encouragement.

In the present case, although the plaintiff does allude to alleged state regulatory nexuses with the Dental School—specifically, (1) Massachusetts regulation of the handling and disposal of cadavers, and (2) Dental School participation in "governmentally regulated projects"—neither appears even remotely connected to the disciplinary process which resulted in the plaintiff's expulsion. Rather, Tynecki's punishment reflected the Dental School's desire to preserve ethical and professional behavior within its purview. There was no act of government "which in fact motivated the private action." *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 450 (1st Cir.1983); *See Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988) ("even if the state had specifically required ... [the College] to adopt the precise rules set forth in its [code], the ultimate power to select a particular sanction in individual cases would ... rest with the private party"). Any assertion of state compulsion is conspicuously absent.

### 2. *Public Function*

State action is also present when government delegates to the private sector functions that are "traditionally the *exclusive* prerogative of the state." *Rockwell,* 26 F.3d at 258–59 (quoting *Jackson v. Metropolitan Edison, Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). This state action theory prevents states from escaping their traditionally exclusive responsibilities by shifting them to the private sector. *See Rockwell,* 26 F.3d at 258 (citing *Johnson v. Pinkerton Academy,* 861 F.2d 335, 338 (1st Cir.1988)).

The plaintiff presents four distinct arguments that the defendants' actions constituted state action pursuant to the above public function test. The court will consider each of these arguments in turn.

#### a. *Disciplinary Proceedings as Professional Regulation*

Tynecki first maintains that the Dental School became a state actor when it per-

manently expelled him. He argues that the dismissal effectively denied his ability to pursue his chosen professional career, an act of professional regulation which is a traditionally exclusive public function. This court, however, refuses to stretch the public function test to such extremes. Despite the possible professional repercussions of Tynecki's expulsion, the Dental School's disciplinary action was purely private, an effort to preserve the integrity of its own educational environment. The fact that Tynecki may have problems obtaining admission to other dental schools in the future does not transform the present disciplinary hearings into professional licensing.

■ Moreover, the first circuit has recognized that, even at the high school level, education is not a traditionally exclusive public function. *Johnson*, 861 F.2d at 338; *See also Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (educating specially disadvantaged and troubled children is not an exclusive state operation). As such, the court refuses to conclude that disciplinary proceedings within a private graduate institution somehow attain the level of a traditionally exclusive government function when even the education of high school students does not. Instead, such disciplinary proceedings have typically been left to the private parties involved. *See, e.g., Cloud v. Trustees of Boston University*, 720 F.2d 721 (1st Cir.1983) (challenging disciplinary actions taken by Boston University against one of its students).

### b. *Dental School's Failure to File Reports with State Agencies*

The plaintiff next argues that the Dental School acted on behalf of the State when it failed to report the desecration of the cadaver:

> [The Dental School] and its officials have premised the actions on an alleged defecation on a cadaver. State regulations in the State of Massachusetts govern the handling and disposal of cadavers. Since [Dental School] officials have denied they had any physical evidence of tampering with a cadaver in their possession and have

apparently failed to file necessary reports for the State Agencies involved, they are clearly acting instead of the State in this matter.

Pl.Op. to Defs.Mtn. to Dismiss at 2–3.

■ First, the court notes that the plaintiff has not identified any regulations requiring the described reporting. Furthermore, even assuming that there are regulations which apply in the present circumstances, the Dental School was not exercising a traditionally exclusive public function by failing to comply with such regulations. Plaintiff's argument appears to be that, because the Dental School failed to meet the alleged State reporting requirements, it effectively created and then abided by its own rules regarding dead bodies, thereby replacing the State's laws. This analysis, however, is too expansive. If the failure to abide by state regulation could turn a private party into a state actor, the state action requirement would become virtually limitless, failing to "preserve an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753. This court declines to so undermine the narrow confines of the state action requirement.

### c. *Dental School's Participation in Subsequent Criminal Proceeding*

■ The plaintiff further maintains that the Dental School became a state actor by virtue of various Dental School officials' participation in his criminal assault investigation.[6] This criminal prosecution theory, however, must fail for reasons similar to the plaintiff's argument in part (III)(A)(2)(b) above. If a private citizen could become a state actor merely by participation in the criminal process, an inordinate number of individuals would be encompassed within the scope of the Constitution's prohibitions. Such an expansion would threaten the sphere of personal autonomy which the state action requirement was designed to protect. *See Edmonson v. Leesville Concrete Co., Inc.*,

---

**6.** Tynecki's alleged criminal assault on fellow    student Peter Cummings.

500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991).

Moreover, even if the defendants' involvement in the criminal prosecution did somehow rise to the level of state action, the criminal prosecution did not concern the prior disciplinary hearing which is the subject of the present action. The defendants' involvement in this prosecution is therefore inapposite. The plaintiff's claimed deprivation was the result of the Dental School's disciplinary proceedings and not related to the later criminal assault charges.[7]

#### d. Dental School's Permanent Exclusion of Tynecki from School Property

Lastly, the plaintiff argues that, pursuant to the district court's holding in *Citizens to End Animal Suffering v. Faneuil Hall,* 745 F.Supp. 65 (D.Mass.1990), the Dental School exercised a traditionally exclusive public function when it denied him access to school property. Tynecki's reliance on *Citizens to End Animal Suffering,* however, is incorrect. In that case, Faneuil Hall excluded members of the public from a public way. The court found that in so doing, Faneuil Hall was exercising a traditionally exclusive public function. *Citizens to End Animal Suffering,* 745 F.Supp. at 72.

■ In the present case, however, the Dental School is not excluding Tynecki from a public way. Rather, the Dental School is exercising the traditionally private function of regulating access to private property. Accordingly, its conduct cannot be construed as state action under the public function test.

#### 3. Symbiotic Relationship

The final state action inquiry is the symbiotic relationship test. Pursuant to this test, the actions of a private party constitute state action "where the State 'has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.' " *Citizens to End Animal Suffering,* 745 F.Supp. at 72 (quoting *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961)).

■ The plaintiff makes two arguments for state action herein. First, he maintains that the Dental School is a state actor because of various financial and regulatory connections between the Dental School and the State.[8] The Supreme Court, however, has consistently held that extensive regulation and financial aid, without more, is not sufficient to elevate defendants' conduct to the level of state action. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

■ Second, the plaintiff maintains that the State derives economic benefit from the Dental School, as well as its students and faculty, many of whom are registered voters and tax payers. But, the mere fact that private parties bring revenue to the State, are tax payers and are registered voters does not create the necessary symbiotic relationship. If it did, then every large employer would become a state actor. Rather, the crucial inquiry is "whether the state profited from the [challenged] activity." *Ponce,* 760 F.2d at 382 (citing *Rendell–Baker,* 457 U.S.

---

**7.** Tynecki's reliance on *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), to support his argument for state action is misplaced for the same reason. In *Edmonson,* the Court held that a private litigant's use of allegedly race based peremptory challenges to exclude jurors in a civil case was state action. 500 U.S. at 618–628, 111 S.Ct. at 2081–2087. To reach this holding, the Court reasoned that selection of jurors involved a traditional government function delegated to private litigants. *Edmonson,* 500 U.S. at 624–26, 111 S.Ct. at 2084–86. In *Edmonson,* however, the plaintiff's asserted Constitutional deprivation was the direct result of the peremptory challenges which

were found to be state action. To the contrary, Tynecki's alleged Constitutional deprivation was the product of the Dental School's disciplinary hearings, and had no connection to the claimed state action—the defendants' involvement in the criminal prosecution.

**8.** In particular, the Dental School is chartered under the laws of Massachusetts, receives direct and indirect federal financial assistance, is involved in numerous government research projects, and participates in various governmentally regulated activities.

at 843, 102 S.Ct. at 2772). And, even though Massachusetts clearly does profit from the presence of the Dental School in the Boston area, the plaintiff cannot establish that Massachusetts somehow profited from Tynecki's expulsion, the challenged activity in the present case.

B. *Intentional Infliction of Emotional Distress*

■ Count III of the plaintiff's complaint asserts intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress, the plaintiff must allege the following four elements:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community"; (3) that the actions of the defendant were the cause of plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315, 318–319 (1976) (citations omitted). The defendants, in their motion to dismiss, argue that the plaintiff has failed to plead this prima facie case. Specifically, the defendants maintain that the circumstances surrounding Tynecki's expulsion do not approach the level of "extreme and outrageous" conduct necessary for liability. Furthermore, defendants claim that Tynecki has entirely failed to allege emotional distress resulting from the defendants' actions.[9]

In his complaint, the plaintiff does allege that, "despite investigation performed both before and after the suspension of the Plain-

tiff, which investigation cast considerable doubt upon the guilt of the Plaintiff, [the Dental School] continued to suspend the Plaintiff, based upon the barest and most unsubstantiated of allegations." Complaint at ¶ 18. Accepting this allegation as true for purposes of this motion, the court believes that such conduct could be construed as "extreme and outrageous" in satisfaction of the plaintiff's prima-facie case.

■ Nonetheless, plaintiff's claim for intentional infliction of emotional distress still must fail. In particular, as pointed out by the defendants, the plaintiff's complaint does not present any factual allegations of emotional distress resulting from the challenged conduct. Instead, the plaintiff simply states that "the Defendants have intentionally inflicted emotional distress upon Plaintiff by instituting a disciplinary proceeding without legal basis, knowing full well that the initiation of such action would cause extreme emotional distress and embarrassment to the Plaintiff." Complaint at ¶ 36. Such an unsupported assertion is not enough for this court to conclude that the plaintiff may have suffered severe emotional distress as a result of the defendants' actions.

C. *Slander*

The plaintiff's fifth count is for slander. He asserts that the defendants knowingly published false material related to his professional character, thereby discrediting him in a "considerable and respectable class of the community." *See* 37 NOLAN AND SARTORIO, MASSACHUSETTS PRACTICE, TORT LAW § 188 *et seq.* (1989). The defendants, maintain, however, that their communications were protected by a conditional privilege. This conditional privilege allegedly permitted them to

---

9. Defendants also argue that the plaintiff's complaint fails to make any allegation of "physical harm manifested by objective symptomatology." Pl.Mtn. to Dismiss at 10. They maintain that such an allegation is required to support a claim for emotional distress. The physical harm requirement, however, applies only to claims for negligent, and not intentional, infliction of emotional distress. *See Agis*, 355 N.E.2d at 318 ("one who, by extreme and outrageous conduct and without privilege, causes severe emotional

distress to another is subject to liability for such emotional distress even though no bodily harm may result"); *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 180 (1982) ("[w]e conclude that when recovery is sought for negligent, rather than intentional or reckless, infliction of emotional distress, evidence must be introduced that the plaintiff has suffered physical harm"). Defendants' argument on this point, therefore, is incorrect.

disclose even false information in the course of investigating the desecration charges.

Massachusetts does grant a conditional privilege to "communications between those having a common interest in the substance of the communications" where the communication is of a kind "reasonably calculated" to protect and further such common interest. *Johnson v. Educational Testing Service*, 754 F.2d 20, 26 (1st Cir.1985), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985); *Catrone v. Thoroughbred Racing Associations of North America*, 929 F.2d 881, 887 (1st Cir.1991). This common law privilege, however, is "conditioned upon the manner in which the privilege is exercised." *Sheehan v. Tobin*, 326 Mass. 185, 93 N.E.2d 524, 528 (1950) (quoting Restatement of Torts § 599, comment a). "The privilege may be abused either through 'unnecessary, unreasonable or excessive publication of the defamatory matter' or by publishing defamatory information with 'actual malice.'" *Catrone*, 929 F.2d at 889 (citations omitted).

Although the Massachusetts courts have not yet addressed the issue of defamation in a student disciplinary procedure, the Supreme Judicial court has held, in the employer-employee context, that "[a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *McCone v. New England Tel. and Tel. Co.*, 393 Mass. 231, 471 N.E.2d 47, 51 (1984) (quoting *Bratt v. International Business Machs. Corp.*, 392 Mass. 508, 467 N.E.2d 126, 129 (1984)). Guided by this line of cases, as well as by other jurisdictions who have found a conditional privilege in the context of student disciplinary procedures, *See Vargo v. Hunt*, 398 Pa.Super. 600, 581 A.2d 625 (1990), this court finds that the conditional privilege extends to the educational arena under Massachusetts law.

In the present case, the communications concerning Tynecki's alleged desecration of the cadaver fall within the conditional privilege. The Dental School Guide to Ethical Practices and Professional Conduct, which governs both students and faculty members [10], seeks to preserve the Dental School's ideals of "honesty," "integrity," "ethical practices," "professional conduct," and "good moral character." Dental School Guide to Ethical Practices and Professional Conduct, Introduction and Ethical Practices And Professional Conduct. Maintenance of these values impacts on both the students and faculty and is necessary to promote a "community of scholars interested in the search for, and the understanding of truth." Dental School Guide to Ethical Practices and Professional Conduct, Introduction.

By discussing the charges against Tynecki, the defendants promoted their "common interest" in the Dental School's reputation for integrity, morality and professionalism. The communications were therefore conditionally privileged. And, because the plaintiff has failed to make any allegations that the defendants, other than defendant Rufo, abused their privilege by publishing the allegedly defamatory material either recklessly, excessively or with actual malice, plaintiff's defamation claim must be dismissed.

Plaintiff does allege, however, that "[s]tatements made by Defendant Myra Rufo, were made in bad faith, were knowingly false, were made with intent of impugning and destroying Plaintiff's reputation, and were made with the intent of prejudicing witnesses and others from assisting Plaintiff in his defense of himself." Complaint at ¶ 28. The court reads this statement as an allegation of actual malice, "'an intent to do an act which goes beyond, or lies outside the purpose of the privilege.'" *Catrone*, 929 F.2d at 890 (quoting *Boston Mut. Life Ins. Co. v. Varone*, 303 F.2d 155, 159 (1st Cir.

10. "Students and faculty of [the Dental School] have formulated the following guide to ethical practices and professional conduct and it is expected that all will adhere to it and be guided by it." Dental School Guide to Ethical Practices and Professional Conduct, Ethical Practices And Professional Conduct. "Students, faculty members, and members of the administration are expected to report violations of ethical standards and professional conduct." Dental School Guide to Ethical Practices and Professional Conduct, Procedures For Filing Charges.

1962)). Because the plaintiff's complaint states a valid claim for defamation against Rufo, and alleges actual malice to overcome the application of the conditional privilege, the defendants' motion to dismiss Count V with respect to defendant Rufo must be denied.

## IV.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss is hereby ALLOWED as to all counts, except as to the count of defamation against Myra Rufo.