**Mary E. MORSE, Plaintiff–Appellant,**

v.

**NORTH COAST OPPORTUNITIES, INC., Defendant–Appellee.**

No. 96–15060.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1997.

Decided July 8, 1997.

Susan Sher, Ukiah, CA, for plaintiff–appellant.

Carla J. Hartley, Borton, Petrini & Conron, San Francisco, CA, for defendant–appellee.

Before: ALARCON, BEEZER and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a Head Start parents council is liable for alleged federal constitutional violations in approving an employee's termination.

## I

North Coast Opportunities, Inc. ("NCO") is a private, non-profit community action agency which provides a number of social services to low-income residents of the Lake and Mendicino counties of California. NCO operates a Head Start program which is primarily funded by the federal government, subject to numerous federal regulations. The Head Start program is devoted to providing quality pre-school education to needy children.

The Parents Policy Council ("PPC")[1] was organized by NCO pursuant to federal regulations. The goal of the PPC is to involve parents in decision-making.[2] The regulations provide that parents of Head Start students should make up at least 50% of the members on the PPC. The PPC is to serve as a link with area organizations, to plan activities for parents and community residents, to recruit volunteers for the Head Start programs, and to distribute parent activity funds. See 45 C.F.R § 1304 app. B (1996).

The regulations allocate responsibility for personnel decisions among various elements at a typical Head Start program. Hiring and firing staff members is the "general responsibility" of the Board of Directors.[3] The Executive Director has the "operating responsibility" for "performing the function" consistent with the directions of the Board. Finally, the PPC must approve the firing decision before final action is taken. Id. The regulations do not include any substantive standards regarding personnel policies or procedural guidelines.

Mary Morse was hired as a temporary teacher's aide in NCO's Head Start program in September 1993, and became a regular employee in December. Morse was laid off at the end of the Head Start semester in June 1994. On July 27, 1994, Morse received notice that she would not be rehired in the fall. Morse claims that this decision was made in retaliation for complaints she had raised regarding the Head Start program, while NCO claims that the decision was based on her poor evaluations. According to NCO, the decision to terminate Morse was initiated by NCO's Manager of Children's

---

1. Although the regulations refer to this entity as a "Policy Council," we follow the district court and the parties in using the term "Parents Policy Council" to refer to NCO's Head Start Policy Council.

2. The regulations explain the goals of parent involvement in Head Start.

> It is clear that the success of Head Start in bringing about substantial changes demands the fullest involvement of the parents.... Project Head Start must continue to discover new ways for parents to become deeply involved in decision-making about the program.... This sharing in the decisions for the future is one of the primary aims of parent participation and involvement in Project Head Start.

45 C.F.R § 1304 app. B (1996).

3. "General Responsibility" means that "[t]he individual or group with legal and fiscal responsibility guides and directs the carrying out of the function" by the individual with "operating responsibility" 45 C.F.R. § 1304 app. B.

Services, and approved by NCO's Executive Director. The matter was then submitted to the PPC which also approved the decision.

Morse filed suit in federal district court against NCO in May 1995 alleging four claims. Her first cause of action under 42 U.S.C. § 1983 stated that NCO violated her First, Fifth and Fourteenth Amendment rights under color of State law and requested $800,000 in damages plus attorneys' fees. The three additional claims were State law causes of action, alleging discharge in violation of public policy, breach of contract, and breach of the covenant of good faith and fair dealing as to which Morse sought an additional $1.4 million in damages.

NCO filed a motion to dismiss under Fed R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. NCO argued that since it was a private entity which was not acting under color of State law the court lacked jurisdiction to hear the case. Morse responded by claiming that the PPC was a governmental actor because it was created by federal regulations and was empowered by those regulations to approve or disapprove firing decisions. According to Morse, this meant that NCO was acting pursuant to federal law in firing her. She also argued that under Ninth Circuit law federal governmental actors can be sued under § 1983.

The court construed NCO's motion as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The court further noted that, because only federal action was alleged, it appeared that Morse really intended the action to be brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), rather than under § 1983. However, since the relevant question in either case turned on whether the PPC was a governmental actor so as to give rise to liability for constitutional deprivations,

the court went on to conduct a governmental action inquiry. It found that the PPC was not a governmental actor and so could not be held liable for violations of Morse's constitutional rights. The court declined to exercise jurisdiction over the pendant State law claims, and dismissed Morse's entire complaint without prejudice to refiling in State court. Morse timely appealed.

## II

■ We now consider whether the actions of the PPC give rise to liability for constitutional violations. Individuals and private entities are not normally liable for violations of most rights secured by the United States Constitution. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). In order to maintain a cause of action based on an allegation of constitutional violations, a plaintiff must show that the actions complained of are "fairly attributable" to the government. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982); *see also Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 567 (9th Cir.1987). To survive a 12(b)(6) motion to dismiss, Morse was required to show that it would be fair to attribute the PPC's approval of Morse's termination to the federal government.[4]

### A

Morse first relies upon our decision in *Ginn v. Mathews*, 533 F.2d 477 (9th Cir.1976) to establish that government action was implicated in her termination. In that case we held that a Head Start program involved sufficient federal and State government action to sustain a suit for alleged constitutional violations. We relied on the Supreme Court's definition of governmental action in *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).[5]

---

4. For purposes of the analysis in Part II we assume, as did the district court, that the claim could have been brought under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), rather than § 1983 as recited in the complaint.

5. *Burton* established the "symbiotic relationship" test for governmental involvement in a private

party's actions. It held that the State of Delaware could be held to be a "joint participant" in the discriminatory practices of a restaurant that operated out of and financially supported a State-owned and operated parking garage. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961) ("The State has so far insinuated itself into a

Our finding of government involvement was predicated on significant federal and State funding and regulations governing the operation of the program. *Ginn*, 533 F.2d at 479–80.

As noted by the district court, subsequent decisions by the United States Supreme Court have significantly undermined the holding of *Ginn*. The Court has since made it clear that governmental funding and extensive regulation without more will not suffice to establish governmental involvement in the actions of a private entity. *Rendell–Baker*, 457 U.S. at 842–43, 102 S.Ct. at 2771–72 (1982).

*Rendell-Baker* involved a § 1983 challenge to the termination of several employees from a privately run school. The Court noted that the school received almost all of its funding from the State, most of the children were referred to the school by the State, many regulations were imposed on the school, and a State-mandated committee approved hiring decisions. *Id.* at 832–33, 102 S.Ct. at 2766–67. Nonetheless, the Court held that the termination decisions could not be attributed fairly to the State. Although there was substantial regulation of the school, there was no evidence that the terminations were "compelled or even influenced by any State regulation." *Id.* at 841, 102 S.Ct. at 2771.

The Court went on to note that the "symbiotic relationship" test of *Burton*, upon which *Ginn* relied, was not satisfied by a mere showing of extensive governmental funding and regulations. *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2771. The Court explained that *Burton*'s symbiotic relationship test required additional evidence of in-

terdependence, such as the physical location of the private entity in a building owned and operated by the State, and a showing that the State profited from the private entity's discriminatory conduct. *Id.* This holding directly undermines *Ginn*'s analysis of governmental action under *Burton*, because *Ginn* found that significant funding and regulations alone would suffice to establish governmental action. *Ginn*'s analysis did not mention evidence of additional interdependence between the government and the Head Start Program, evidence that the government had compelled or influenced the firing decision, nor allegations that the government had benefited in any way from unconstitutional behavior by the Head Start program.

We note that no Ninth Circuit case has cited *Ginn* for the proposition that funding and regulations alone will suffice to establish that the actions of a private individual or entity constitute governmental action since the Supreme Court decided *Rendell–Baker*.[6] Indeed, the Tenth Circuit has questioned *Ginn*'s holding in light of *Rendell–Baker*. *See Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 636 (10th Cir.1983) (noting that *Ginn*'s "result seems questionable in light of subsequent Supreme Court precedent.")

We conclude that to the extent that *Ginn* held that extensive governmental funding and regulation of a private entity will suffice to establish governmental action for purposes of suit under § 1983 or *Bivens*, it has been implicitly overruled by *Rendell–Baker*.

**B**

■ We also affirm the district court's conclusion that *Rendell–Baker* controls the

position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity.").

**6.** Morse argues that *Ginn* has been cited in subsequent cases, but we note that the citations have been for the limited proposition that private parties may be held liable for constitutional violations where the test for governmental action is satisfied. *See F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318 (9th Cir.1989); *Schowengerdt v. General Dynamics*, 823 F.2d 1328, 1337 (9th Cir.1987).

Nor does our mention of *Ginn* in *Broad v. Sealaska*, 85 F.3d 422, 431 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 768, 136 L.Ed.2d

714 (1997) support a finding that *Ginn* is still good precedent. In that case we merely pointed to *Ginn*'s anomalous holding without endorsing or relying on the decision. *Id.* ("Without governmental encouragement or coercion, actions taken by private corporations pursuant to federal law do not transmute into government action under the Fifth Amendment.... *But see Ginn v. Mathews*, 533 F.2d 477, 480 (9th Cir.1976) (finding governmental action in an employment decision by the Economic Opportunity Council of San Francisco, by emphasizing that the Council was operating with almost exclusively federal funds).").

outcome of this case, in conformity with the Eleventh Circuit's decision in an almost identical case involving a fired Head Start employee. *See Nail v. Community Action Agency*, 805 F.2d 1500, 1502 (11th Cir.1986). Although *Rendell–Baker* involved a § 1983 challenge to the actions of a private entity operating under color of State law, we have held that the standard for determining the existence of federal government action can be no broader than the standard applicable to State action under § 1983. *Vincent*, 828 F.2d at 567. We therefore examine the facts of Morse's case under the test for governmental action as laid out in *Rendell–Baker*.

Four factors were considered in *Rendell–Baker* to determine whether governmental action was implicated in the firing decisions of a private school. The court considered: (1) the source of the school's funds; (2) the impact of governmental regulations on the conduct of the private employer; (3) whether the private actor was performing a function that is traditionally the exclusive prerogative of the government; and (4) whether a symbiotic relationship existed between the private actor and the government. *See Vincent*, 828 F.2d at 568–70.

As to the first factor, the Supreme Court held that the fact that a private school received almost all of its funds from the government did not transform its actions into governmental actions. *Rendell–Baker*, 457 U.S. at 840–41, 102 S.Ct. at 2770–71. Similarly, the fact that NCO's Head Start program is funded almost exclusively by the federal government does not support a finding of governmental action here. *See Vincent*, 828 F.2d at 568.

Second, the Supreme Court held that while the school was subject to substantial State regulations, there was no showing that the firing decision had been "compelled or even influenced by any State regulation." *Rendell–Baker*, 457 U.S. at 841, 102 S.Ct. at 2771. Morse argues that the federal regulations in her case demonstrate a much greater government involvement in the firing decision than was present in *Rendell–Baker*. She points to the federal regulations which authorized the creation of the PPC, specified that the PPC should have a 50% parent

membership, and entrusted the PPC with approving or disapproving all hiring and firing decisions. According to Morse, these regulations demonstrate that the PPC's firing decision was influenced by the federal government. We disagree.

The regulations concerning the PPC include no substantive standard which could have compelled or influenced the PPC to decided whether to fire Morse. Nor did the regulations create any procedural guidelines which the PPC was required to follow in considering the question. No government employees served on the PPC, and all of its members were private individuals making decisions about a number of Head Start matters. Rather than suggesting a concern with personnel decisions as such, we think it is clear that the regulations cited by Morse demonstrate a concern to involve parents in making decisions about the overall Head Start experience for their children.

We therefore conclude that the federal regulations authorizing the PPC, specifying its composition, and giving it authority to approve firing decisions do not support a finding that the PPC's decisions can be fairly attributed to the federal government. *See, generally, Broad v. Sealaska Corp.*, 85 F.3d 422, 431 (9th Cir.1996) (holding that "[w]ithout governmental encouragement or coercion, actions taken by private corporations pursuant to federal law do not transmute into government action"), *cert. denied*, —— U.S. ——, 117 S.Ct. 768, 136 L.Ed.2d 714 (1997); *Mathis v. Pacific Gas and Elec. Co.*, 75 F.3d 498, 501 (9th Cir.1996) (requiring a showing that federal regulations created the "standard of decision" for the personnel decision of a private entity to be considered governmental action); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir.1995) (finding that actions of a private entity were not governmental action where no State regulation or policy compelled the offensive action); *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986) (finding no government action in a bank's loan decision even though the bank was created by a federal agency to accomplish federal objectives, was subject to extensive regulations, and some of the bank's

directors and managers were appointed by a federal bank board).

Third, the Court in *Rendell–Baker* considered whether the private entity was performing a function that was "traditionally the exclusive prerogative" of the government. *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2771. Here the Head Start program was educating pre-school children. Pre-school education is not a function that is normally carried out by the federal government, much less is it the "exclusive prerogative" of the federal government. Thus, the public function test does not suggest that there was governmental action here. *See Parks School of Business*, 51 F.3d at 1486 (finding no government action implicated because provision of student loan insurance is not the exclusive prerogative of the government).

And finally, the Court considered whether there was a "symbiotic relationship" between the school and the government as had been found in *Burton*. *Rendell–Baker*, 457 U.S. at 843, 102 S.Ct. at 2772. The court held that a heavily financed and regulated school did not satisfy the symbiotic relationship test because there was no showing that the government profited from the school's alleged constitutional violations. *Id.* Similarly, there is no evidence here that the federal government profited from any alleged constitutional violation in the PPC's decision to approve Morse's termination. The fourth factor thus counsels against a finding that the federal government was implicated in the PPC's decision. *See Vincent*, 828 F.2d at 569 (finding no symbiotic relationship where government did not profit from alleged unconstitutional conduct of a private entity).

Because the actions of the PPC cannot be fairly attributed to the government, the district court correctly ordered the complaint dismissed for failure to state a claim upon which relief can be granted.

### III

Finally, we note that Morse's complaint is invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors. Section 1983 provides a cause of action against any person "acting under color of State law" who causes a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983. In her briefs and at oral argument, Morse's attorney has asserted that § 1983 is an appropriate vehicle for bringing suit against those acting under color of either federal or State law. When questioned as to whether this suit should more properly be styled as a *Bivens* claim, she stated that it should not.

■ As noted in Part II, we apply similar tests to determine whether federal action exists to support a *Bivens* claim or to determine whether State action will permit a § 1983 cause of action. *Mathis v. Pacific Gas and Elec. Co.*, 891 F.2d 1429, 1432 n. 3 (9th Cir.1989). In both cases we conduct an inquiry into whether it is fair to attribute the challenged actions to either the federal or State government.

■ However, the fact that similar standards are used in analyzing the prerequisites of § 1983 and *Bivens* causes of action does not mean that the claims are interchangeable. Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, § 1983 precludes liability in federal government actors. As no State action is implicated, we must deny Morse's request for attorneys' fees under § 1988.

■ Because Morse's § 1983 complaint against NCO is completely barred by the terms of the statute, we find that her claim is "unreasonable" and "meritless." *See Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir.1995); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994). Morse has not alleged any actions by NCO which could be attributed to the State of California. We therefore grant NCO's request for attorneys' fees on appeal under § 1988 as the prevailing defendant in a § 1983 civil rights suit. Determination of reasonable attorneys' fees is transferred to the district court.

The district court's order is AFFIRMED. Appellant's request for attorneys fees is DENIED. Appellee's request for attorneys'

fees is GRANTED and the matter is RE-MANDED for further proceedings.