**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL CAVINESS,
            *Plaintiff-Appellant,*

v.

HORIZON COMMUNITY LEARNING
CENTER, INC.; LAWRENCE PIERATT,
            *Defendants-Appellees.*

No. 08-15245

D.C. No.
CV-07-00635-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
June 9, 2009—San Francisco, California

Filed January 4, 2010

Before: Stephen S. Trott, M. Margaret McKeown, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**COUNSEL**

David C. Larkin, David. C. Larkin P.C., Tempe, Arizona, for the appellant.

Sally A. Odegard and Larry J. Wulkan, Holloway, Odegard, Forrest & Kally, P.C., Phoenix, Arizona, for the appellees.

**OPINION**

IKUTA, Circuit Judge:

This appeal requires us to decide whether a private non-profit corporation that runs a charter school[1] in Arizona was a state actor under 42 U.S.C. § 1983 when it took certain employment-related actions with respect to a former teacher, Michael Caviness. The district court held that Horizon Community Learning Center ("Horizon") and its executive director, Lawrence Pieratt, were not functioning as state actors in these circumstances.[2] Because the allegations in Caviness's complaint are insufficient to raise a reasonable inference that Horizon was a state actor and thus acted under color of state law in taking the alleged actions after Caviness was terminated, we affirm the judgment of the district court.

I

Horizon is a private, non-profit corporation that operates a charter school in Arizona. Because Caviness's argument is primarily based on the Arizona statutes and regulations that authorize and regulate charter schools, we provide a brief description of the relevant provisions.

A

In Arizona, charter schools are "public school[s] established by contract with a district governing board, the state board of education, or the state board for charter schools . . .

---

[1]Section 15-101(3) of the Arizona Revised Statutes provides:

"Charter school" means a public school established by contract with a district governing board, the state board of education or the state board for charter schools pursuant to article 8 of this chapter to provide learning that will improve pupil achievement.

[2]We refer to Pieratt by name when appropriate, and otherwise refer to defendants collectively as "Horizon."

to provide learning that will improve pupil achievement." Ariz. Rev. Stat. § 15-101(3) (footnote omitted). Charter schools "serve as alternatives to traditional public schools" by "provid[ing] additional academic choices for parents and pupils," and they are intended "to provide a learning environment that will improve pupil achievement." *Id.* § 15-181(A). By contrast, Arizona defines a "private school" as a "nonpublic institution where instruction is imparted." *Id.* § 15-101(19). Charter schools are publicly funded, although they are authorized to accept private grants and gifts. *Id*. § 15-185(D).

A private or public entity seeking to create a charter school must submit an application and be "sponsored" by either "a school district governing board, the state board of education or the state board for charter schools." *Id*. § 15-183(C).[3] In turn, "[t]he sponsor of a charter school may contract with a public body, private person or private organization for the purpose of establishing a charter school . . . ." *Id*. § 15-183(B). The sponsoring entity of a charter school has "oversight and administrative responsibility for the charter schools that it sponsors." *Id*. § 15-183(R).

Each charter school must develop a plan for running the school on a largely autonomous basis. A school's charter must specify "a governing body for the charter school that is

---

[3]The statute describes the application process as follows:

> The application shall include a detailed business plan for the charter school and may include a mission statement for the charter school, a description of the charter school's organizational structure and the governing body, a financial plan for the first three years of operation of the charter school, a description of the charter school's hiring policy, the name of the charter school's applicant or applicants and requested sponsor, a description of the charter school's facility and the location of the school, a description of the grades being served and an outline of criteria designed to measure the effectiveness of the school.

Ariz. Rev. Stat. § 15-183(A).

responsible for the policy decisions of the charter school." *Id.* § 15-183(E)(8). The charter must "include a description of the charter school's personnel policies, personnel qualifications and method of school governance and the specific role and duties of the sponsor of the charter school." *Id.* § 15-183(F).

Charter schools are subject to certain state regulations. The state's Department of Education promulgates a list notifying charter schools of their obligations to comply with specified federal, state, and local statutes and rules relating to health, safety, civil rights, and insurance. *Id.* § 15-183(E)(1). Charter schools are required to display a United States flag in each classroom and, for grades 7 through 12, purchase copies of the Constitution and Bill of Rights. *Id.* § 15-506. According to Arizona's Attorney General, charter schools are deemed to be "political subdivisions" of the state for purposes of complying with Arizona's Open Meetings Act. *See* Ariz. Op. Atty Gen. No. 195-10, 1995 WL 870820 at *4 (1995). *But see Salt River Pima-Maricopa Indian Cmty. Sch. v. Arizona*, 23 P.3d 103, 108 (Ariz. 2001) (holding that the Attorney General's conclusion that charter schools were political subdivisions of the state for purposes of open meeting laws did not influence the court's determination that charter schools were not political subdivisions of the state for purposes of a federal statute that limited the amount of federal funds such schools could receive).

Several Arizona statutes are applicable to charter school employees. Charter school employees must undergo fingerprinting and background checks, and charter schools may not employ teachers who have been convicted of certain crimes. Ariz. Rev. Stat. § 15-183(C)(4). Teachers at charter schools are also afforded certain benefits. Among other things, "[a] charter school that is sponsored by a school district governing board, the state board of education or the state board for charter schools is eligible to participate in the Arizona state retirement system . . . ." *Id.* § 15-187(C). State retirement benefits are available to "any person in the employ of . . . a political

subdivision" of Arizona, *id*. § 38-701(2), and charter schools are "a political subdivision of th[e] state for purposes of [employee retirement eligibility definitions in] title 38, chapter 5, article 2," *id.* § 15-187(C).

Except as otherwise specified in Arizona statutes regulating charter schools, or in the school's own charter, a charter school "is exempt from all statutes and rules relating to schools, governing boards and school districts." *Id*. § 15-183(E)(5). Charter schools are therefore exempt from state teacher-certification requirements, as well as the statutes governing dismissal of certified teachers. *See id.* § 15-531 *et seq*.

B

Caviness was employed as a high school physical education teacher, health teacher, and track coach at Horizon for six years.[4] In February 2006, a female student filed a grievance against Caviness alleging that "the student-teacher boundary had been crossed." Horizon immediately put Caviness on paid administrative leave and thereafter initiated an investigation. In March 2006, the Horizon Board held a hearing regarding the student's allegations, at which Horizon, but not Caviness, questioned the student.

Evidence elicited at the hearing indicated that the female student and Caviness had been communicating via telephone, and that "the student had a crush on him." When the student learned that Caviness had an adult girlfriend, the student became upset and retaliated against Caviness by filing the grievance. The Horizon Board determined that Caviness had exercised questionable judgment regarding the extent of his personal communications with the student, and therefore decided not to renew Caviness's teaching and coaching con-

---

[4]The underlying facts are taken from Caviness's complaint, and are presumed true for purposes of reviewing a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Marder v. Lopez*, 450 F.3d 445, 447 n.1 (9th Cir. 2006).

tract. The Board decided to keep Caviness on paid administrative leave until the end of his employment term, which was in June 2006.

In April 2006, Pieratt wrote a letter to Caviness and sent copies to the Horizon Board members and the Arizona Department of Education. Caviness alleges that the letter "contained numerous false and defamatory statements and private information which Pieratt misused to purposely place . . . Caviness in a bad light." In May 2006, Caviness asked Pieratt for permission to attend the Arizona state high school track championship to watch several Horizon students compete, but Pieratt refused to consent.

In July 2006, after the end of his employment term with Horizon, Caviness applied for a position as a teacher and coach with Mesa School District. Mesa decided not to hire him after it asked Pieratt to rate Caviness's ability and knowledge as a teacher, and Pieratt "declined to rate him since the [Horizon] Board had taken the action of non-renewing his contract." Caviness alleges that Pieratt's statement to Mesa was "purposely false and incomplete and was intended to harm" Caviness, since Pieratt "knew that Caviness had an excellent 6-year record as a teacher and coach and it was reasonable and appropriate for [Pieratt] to respond accordingly rather than decline to provide information."

In August 2006, Caviness's attorney sent a letter to Horizon informing it that a Horizon employee had called Caviness a pedophile. The letter demanded "written representations from Horizon that it had instructed all of its agents and employees to cease and desist from making any further false and defamatory statements to anyone." In his reply to this letter, Pieratt did not address these demands, and Caviness claims that another Horizon teacher subsequently defamed him by also calling him a pedophile.

On December 21, 2006, Caviness sent a request to Pieratt for a name-clearing hearing "arising from defendant's con-

duct and/or failure to act subsequent to the March 24, 2006 hearing, and his right [to freedom of] association." Horizon did not respond to this request.

C

In March 2007, Caviness filed a complaint under 42 U.S.C. § 1983 in district court against Horizon. Caviness alleged that Horizon, acting under color of state law, deprived Caviness of his liberty interest in finding and obtaining work without due process by making "several false statements about" him "in connection with his employment, which . . . cause[d] serious damage to Caviness's standing and associations in [the] community or, alternatively, imposed on Caviness a stigma . . . that has . . . interfered with his freedom to take advantage of other employment opportunities," without providing Caviness with notice or a name-clearing hearing. Caviness also alleged that Horizon violated his First Amendment right to freedom of association "by ordering him not to freely associate at certain public events."[5]

In an order issued August 31, 2007, the district court sua sponte raised the question whether Horizon was a state actor for purposes of § 1983, and directed the parties to submit memoranda in support of federal subject matter jurisdiction. The district court subsequently granted Horizon's motion requesting that this briefing be treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

On December 17, 2007, the district court granted Horizon's motion to dismiss. In its order, the district court rejected Caviness's arguments that Horizon was a state actor because of its statutory characterization as a "public school," and because it performed a public function in providing public education. Because there was "no evidence, with respect to [Caviness's]

---

[5]Caviness additionally alleged certain state-law causes of action that are not at issue in this appeal.

specific employment claims, that Horizon acted in concert or conspired with state actors, was subject to government coercion or encouragement, or was otherwise entwined or controlled by an agency of the State," the district court held that Horizon was not functioning as a state actor in executing its employment decisions regarding Caviness.

Caviness brought this timely appeal from the district court's order granting Horizon's motion to dismiss.

## II

We review de novo the district court's conclusion that a party is not a state actor. *Lee v. Katz*, 276 F.3d 550, 553 (9th Cir. 2002). We also review de novo the district court's dismissal of Caviness's complaint under Rule 12(b)(6) for failure to state a claim. *Winn v. Ariz. Christian Sch. Tuition Org.*, 562 F.3d 1002, 1007 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (internal quotation marks omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## III

[1] Section 1983 "provides remedies for deprivations of rights under the Constitution and laws of the United States when the deprivation takes place under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 505 (9th Cir. 1989) (internal quotation marks omitted). In order to recover under § 1983 for conduct by the defendant, a plaintiff must show "that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The state-action element in § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

**[2]** As we have explained, "[s]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "[C]ourts have developed a variety of approaches" for determining whether such a close nexus is present. *Lee*, 276 F.3d at 554 (noting that the Supreme Court in *Brentwood* "list[ed] seven approaches to the issue"); *see id.* at 554 n.3; *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

This case presents the special situation of a private nonprofit corporation running a charter school that is defined as a "public school" by state law. We therefore begin with the recognition that Arizona has statutorily defined a charter school as a "public school." Ariz. Rev. Stat. § 15-101(3). However, because the conduct of a private corporation is at issue, our inquiry does not end there. Rather, in answering the question whether there is a close nexus between the State and the challenged action, our inquiry "begins by identifying the specific conduct of which the plaintiff complains." *Sullivan*, 526 U.S. at 51 (internal quotation marks omitted); *see also*

*Blum*, 457 U.S. at 1003 ("Faithful adherence to the 'state action' requirement . . . requires careful attention to the gravamen of the plaintiff 's complaint."). "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Lee*, 276 F.3d at 555 n.5 (internal quotation marks and alteration omitted).

Thus, in *George v. Pacific-CSC Work Furlough*, we considered the complaint by a custodial staff employee of a private entity, Pacific, which had contracted with California to operate a correctional facility. 91 F.3d 1227, 1230 (9th Cir. 1996). After the custodial employee was terminated, he sued the private company under § 1983, alleging that his First Amendment rights were violated because he was terminated for speaking out about safety and security problems. In rejecting the employee's theory that Pacific was a state actor because it was "performing and fulfilling a traditional state and government function, i.e., operating a correctional detention facility," we explained that "[t]he relevant inquiry is whether [Pacific's] *role as an employer* was state action" in the employee's case, and noted that "[a]n entity may be a state actor for some purposes but not for others." *Id.* (emphasis in original). We concluded that while "Pacific ha[d] been granted certain powers and privileges under the law to allow it to function adequately as a prison," the plaintiff failed to show state action because the "complaint offer[ed] no indication Pacific ha[d] become the government for employment purposes." *Id.* (internal citation, quotation marks, and alterations omitted); *see also Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (in suit by terminated employee of private prison contractor, question in determining state action "is whether [defendant] acted under color of state law in terminating [plaintiff 's] employment, *not* whether its providing juvenile correctional services was state action").

**[3]** In this case, Caviness's complaint objects to Horizon's failure to instruct its employees to cease making statements about Caviness's performance as a teacher, and its refusal to

provide him with a name-clearing hearing. The complaint also objects to Horizon's order forbidding Caviness from having contact with students during the paid administrative leave period. All these actions were taken by Horizon in connection with its role as Caviness's employer, and therefore the relevant inquiry in this case is whether Horizon's role as an employer was state action. *George*, 91 F.3d at 1230.

**[4]** In determining whether Caviness's factual allegations "plausibly give rise to an entitlement to relief," *Iqbal*, 129 S. Ct. at 1950, we are limited to the pleadings in the complaint. With respect to Caviness's claim that Horizon's actions in its role as his employer constituted state action, Caviness's complaint alleges only that Horizon is a non-profit corporation, "an Arizona charter school[,] and [an] Arizona public school operating in Maricopa County," and that Pieratt was acting as president, CEO, or executive director of Horizon. Caviness does not argue that the facts alleged in his complaint render Horizon a state actor. Rather, he argues that under Arizona's statutory scheme, all charter schools are, as a matter of law, state actors. Therefore, Caviness's appeal must fail unless being an Arizona charter school is, by that fact alone, sufficient to make Horizon the government for employment purposes.

A

Caviness first argues that under the statutory and regulatory structure in Arizona, a charter school is a state actor for all purposes, including employment purposes, as a matter of law. Caviness first relies on the fact that Arizona statutes designate charter schools as "public schools," Ariz. Rev. Stat. § 15-101(3), to argue that they provide "public educational services" as a matter of law. Further, he notes that the Arizona Attorney General has concluded that charter school board meetings are subject to Arizona's Open Meetings Act. *See* Ariz. Op. Atty Gen. No. 195-10, 1995 WL 870820, at *4.

**[5]** We disagree. Under § 1983, a state's statutory characterization of a private entity as a public actor for some purposes is not necessarily dispositive with respect to all of that entity's conduct. *See Jackson v. Met. Edison Co.*, 419 U.S. 345, 350 & n.7 (1974) (statutory designation of utility as "public utility" insufficient to make utility a state actor). Rather, a private entity may be designated a state actor for some purposes but still function as a private actor in other respects. *See Gorenc*, 889 F.2d at 507 (holding that an entity designated as a "political subdivision" in the state constitution was not a state actor where the entity, "in the hiring and firing of its employees . . . acts as a private company, that is, in a proprietary manner not in a governmental manner"). Accordingly, Caviness's reliance on Arizona's statutory characterization of charter schools as "public schools" does not itself avail him in the employment context. For the same reason, the opinion of the Attorney General that charter school boards are "political subdivisions" for purposes of Arizona's Open Meetings Act does not help Caviness here. *See id.*; *see also Salt River*, 23 P.3d at 108 (holding that Arizona charter schools were not political subdivisions for certain federal funding purposes). Caviness raises the similar argument that a charter school is a state actor under § 1983 because, in *Greater Heights Academy v. Zelman*, 522 F.3d 678 (6th Cir. 2008), the Sixth Circuit held, "[a]fter considering Ohio's statutory and case law," that Ohio charter schools are a political subdivision of Ohio for purposes of determining whether the schools could sue the state under the Fourteenth Amendment. *Id.* at 680. This conclusion tells us nothing about Arizona's charter school system, however, and so it does not support Caviness's position. Moreover, even if we had determined that an Arizona charter school was a political subdivision of Arizona for purposes of suits under the Fourteenth Amendment, such a determination would not resolve the question whether the state "was sufficiently involved in causing the harm to plaintiff" such that we should treat Horizon as acting under color of state law. *Gorenc*, 869 F.2d at 506.

B

**[6]** Second, Caviness argues that Horizon is a state actor because it provides a public education, a function that is "traditionally and exclusively the prerogative of the state." Courts have "found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352. In these cases, "private individuals or groups are endowed by the State with powers or functions governmental in nature" such that "they become agencies or instrumentalities of the State." *Lee*, 276 F.3d at 554-55 (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). The challenged "function at issue must be both traditionally and exclusively governmental." *Id.* at 555; *see also Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (discussing as state action the exercise of those powers that have been "recognized as traditionally exclusively sovereign").

Caviness argues that since charter schools are "public schools" under Arizona law, they therefore engage in the provision of "public educational services," which he distinguishes from the provision of the "educational services" that the Supreme Court held is not the exclusive and traditional province of the state. *Rendell-Baker*, 457 U.S. at 842. Caviness reasons that "education in general" can be provided by anyone, while "*public* educational services" are traditionally and exclusively the province of the state.

This argument is foreclosed by *Rendell-Baker*. In that case, the Supreme Court addressed the question whether a private school that was almost wholly state-funded could be considered a state actor for purposes of § 1983. *See id.* A Massachusetts statute provided that the state could "enter into an agreement with any public or private school, agency, or institution to provide the necessary special education" to identified students. *Id.* at 832 n.1. The school, a non-profit organization which specialized "in dealing with students who have experienced difficulty completing public high schools," was

"founded as a private institution" and operated by a board of directors who were neither public officials nor chosen by public officials. *Id.* at 832. Nearly all of the students in the school had been referred to the school by the state, and the school's diplomas were publicly certified. *Id.* The tuition of state-referred students was publicly funded, and public funds accounted for 90 to 99 percent of the school's operating budget. *Id.*

**[7]** A former teacher sued the school under § 1983 alleging deprivations of her First, Fifth, and Fourteenth Amendment rights when her employment was terminated after a dispute with the school's board of directors. *Id.* at 835. In evaluating "whether the school's action in discharging [plaintiff] can fairly be seen as state action," *id.* at 838, the Court considered whether the school was performing a public function that has "been 'traditionally the *exclusive* prerogative of the State,' " *id.* at 842 (emphasis in original) (quoting *Jackson*, 419 U.S. at 353). Although the school provided a public function by educating "students who could not be served by traditional public schools," the Court held that the "legislative policy choice" to provide those services at public expense "in no way" made their provision "the exclusive province of the State." *Id.*

**[8]** Like the private organization running the school in *Rendell-Baker*, Horizon is a private entity that contracted with the state to provide students with educational services that are funded by the state. The Arizona statute, like the Massachusetts statute in *Rendell-Baker*, provides that the sponsor "may contract with a public body, private person or private organization for establishing a charter school," Ariz. Rev. Stat. § 15-183(B), to "provide additional academic choices for parents and pupils . . . [and] serve as alternatives to traditional public schools," *id.* § 15-181(A). The Arizona legislature chose to provide alternative learning environments at public expense, but, as in *Rendell-Baker*, that "legislative policy choice in no way makes these services the exclusive province of the State."

457 U.S. at 842. Merely because Horizon is "a private entity perform[ing] a function which serves the public does not make its acts state action." *Id.*; *see also Johnson v. Pinkerton Acad.*, 861 F.2d 335, 338 (1st Cir. 1988) ("Granted that the state requires that its children, to a certain age, be educated, even to the extent of assuming full tuition cost of all who do not voluntarily pay their own way, it does not follow that the mechanics of furnishing the education is exclusively a state function.").

**[9]** Caviness's argument that *Rendell-Baker* does not control this case since the school there was private, whereas here Horizon is a public school as a matter of Arizona law, merely restates his erroneous argument that the state's statutory characterization is necessarily controlling.[6] Accordingly, we conclude that Horizon's provision of educational services is not a function that is traditionally and exclusively the prerogative of the state, and therefore is not a basis for holding that Horizon acted under color of state law in taking the alleged actions relating to Caviness's employment.

C

Caviness alternatively argues that Horizon is a state actor because Arizona regulates the personnel matters of charter schools.

**[10]** This argument also fails. A state may be responsible for a private entity's actions if "it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be

---

[6]Caviness does not expressly argue that Horizon is a state actor by virtue of "public entwinement in the management and control of ostensibly separate trusts or corporations." *Brentwood Acad.*, 531 U.S. at 296. Such an argument in this case would fail, as the complaint is devoid of allegations that any state actors were involved in Horizon's governing board, or that Horizon's sponsor played any role in the employment decisions of the school.

that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citing cases). The Supreme Court has repeatedly held that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Sullivan*, 526 U.S. at 52 (alteration omitted) (quoting *Jackson*, 419 U.S. at 350). Even extensive government regulation of a private business is insufficient to make that business a state actor if the challenged conduct was "not compelled or even influenced by any state regulation." *Rendell-Baker*, 457 U.S. at 841-42; *see also Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1342 (9th Cir. 1997) (extensive federal regulation specifying who had responsibility for school's employment decisions insufficient to create state action because the regulations included "no substantive standard" or "procedural guidelines" that could have guided, compelled, or influenced employment decisions).

Citing section 15-187 of the Arizona Revised Statutes, Caviness contends that charter schools are state actors because charter school teachers have the same legal rights in, and to, their teaching jobs as teachers in the public school districts. *See* Ariz. Rev. Stat. § 15-531 *et seq.*[7] This argument is

---

[7] For the first time on appeal, Caviness alleges that he was a tenured certified teacher entitled to the due process rights set forth in Arizona's statutes. *See* Ariz. Rev. Stat. § 15-531 *et seq.*; *id.* § 15-539, 540, 541. Although his complaint does not include such an allegation, Caviness argues that we should infer that he held this status from the allegations in the complaint stating that he had an employment contract with a specified term, he was given a hearing by Horizon, and he was placed on paid administrative leave after the hearing—requirements that are also mandated under Arizona law for tenured certificated teachers. *See id.* §§ 15-539–541. Although Caviness's argument is not entirely clear, he appears to argue that once we draw the factual inference that he was a certified tenured teacher, we must also draw the legal conclusion that Horizon was a state actor with statutory and constitutional due process obligations. The fact that Horizon implemented certain employment procedures in Caviness's case does not, without more, give rise to the inference that Caviness had a state-recognized status that gave him legal and constitutional entitlements to such procedures, or to further the inference that Horizon was legally obligated to provide them. Accordingly, we decline to make such inferences here. *Iqbal*, 129 S.Ct. at 1949 (holding that "mere conclusory statements" are not enough to survive a motion to dismiss).

erroneous and appears to be based on a misreading of section 15-187(A), which provides those rights only to a school district teacher who was previously a charter school teacher "on th[at] teacher's return to the school district."[8]

[11] Specifically, section 15-187(B)[9] gives hiring priority to teachers who have moved from a public school district to a charter school and who seek to return to the same public school district. Therefore, sections 15-187(A) and (B) ensure that the teacher receives preference when reapplying to his or her prior public school district without a reduction in seniority, certification, or benefits provided to employees by the public school district. This in no way suggests that the government controls or influences post-termination decisions made by Horizon. In fact, Horizon is expressly "exempt from all statutes and rules relating to schools, governing boards and school districts," *id.* § 15-183(E)(5), which include the right to a hearing after dismissal provided by section 15-541. The absence of any reference to charter schools in the statutory sections governing certified teachers' employment rights further supports our conclusion. *See id.* § 15-501 *et seq.*

[12] Caviness also argues that Horizon is a state actor because, under Arizona law, charter schools (but not traditional private schools) are permitted to participate in the

---

[8]Section 15-187(A) states in full:

> A teacher who is employed by or teaching at a charter school and who was previously employed as a teacher at a school district shall not lose any right of certification, retirement or salary status or any other benefit provided by law, by the rules of the governing board of the school district or by the rules of the board of directors of the charter school due to teaching at a charter school on the teacher's return to the school district.

[9]Section 15-187(B) provides in pertinent part that "[a] teacher who is employed by or teaching at a charter school and who submits an employment application to the school district where the teacher was employed immediately before employment by or at a charter school shall be given employment preference by the school district."

state's retirement system. *See id.* § 15-187(C). We are not persuaded. Permitting charter schools to participate in the state's retirement plan provides additional compensation to entities that operate charter schools by relieving them from pension or retirement obligations they might otherwise face. The Supreme Court, as well as case law in this and our sister circuits, permits the state to "subsidize[ ] the operating and capital costs" of a private entity without converting its acts into those of the state. *Rendell-Baker*, 457 U.S. at 840; *see also, e.g.*, *Morse*, 118 F.3d at 1342; *Pinkerton Acad.*, 861 F.2d at 339 (state's act of permitting private school to participate in public retirement program "would be no more than the equivalent of additional compensation to defendant for its teaching services by relieving defendant of pension obligations").

**[13]** Nor does the fact that Horizon's sponsor has the authority to approve and review the school's charter, which includes Horizon's self-created personnel policies and method of governance, change our decision. This type of regulation does not constitute state action because "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Sullivan*, 526 U.S. at 52; *see also Jackson*, 419 U.S. at 357; *Morse*, 118 F.3d at 1342 (citing cases). Even when the state has the power "initially to review the qualifications of a[n employee] selected by the school," such regulation is not sufficient to make the school's employment-related actions those of the state. *Rendell-Baker*, 457 U.S. at 838 n.6, 841-42; *see also George*, 91 F.3d at 1231 (holding that termination was not state action even though the state "retain[ed] the right to dismiss" the employee, because the state had "neither legally regulated nor contractually specified the manner in which [the private actor] disciplines or terminates its own employees").

Caviness does not argue, nor does the complaint allege, that the state was involved in the contested employment actions, or that it showed any "interest in the school's personnel mat-

ters." *Rendell-Baker*, 457 U.S. at 841. None of the regulations cited by Caviness contains substantive standards or procedural guidelines that "could have compelled or influenced" Horizon's actions. *Morse*, 118 F.3d at 1342. Ultimately, Horizon's actions and personnel decisions were "made by concededly private parties, and turn[ed] on judgments made by private parties without standards established by the State." *Sullivan*, 526 U.S. at 53 (internal quotation marks and alterations omitted).

## IV

**[14]** Because the allegations in Caviness's complaint are insufficient to raise a reasonable inference that Horizon was a state actor and thus acted under color of state law in taking the alleged actions after Caviness was terminated, we affirm the judgment of the district court. Caviness's motion for attorneys' fees under 42 U.S.C. § 1988 is denied.

**AFFIRMED.**